## TOLEDO, ST. L. & W. R. CO. v. CONNOLLY.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1907.)

### No. 1,553.

1. RAILROADS—INJURIES TO LICENSEES—NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for killing the superintendent of a milling company by crushing him between certain cars and a wooden spout or chute through which grain was loaded from the mill into the cars, evidence *held* to require submission to the jury of the question of defendant's negligence in backing the cars onto the switch without notice to decedent.

2. TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

An instruction that a witness might be contradicted, not simply by a witness swearing to the opposite, but by the improbability of his story, and by anything, either in the testimony as given or in the circumstances of the case presented, which in the judgment of the jury tended to discredit the witness' statements, the jury being required to ascertain the truth by the exercise of common sense, etc., was proper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 531–533.]

3. DEATH—ACTIONS—PARTIES—BENEFICIARIES.

Under the Ohio wrongful death act, providing that the recovery shall be for the exclusive benefit of the wife or husband, and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused, the recovery to be apportioned among the beneficiaries with reference to their age and condition and the laws of descent and distribution of personal estates left by persons dying intestate, where decedent died leaving a father and mother and brothers and sisters, the action was properly brought for their joint benefit, and not for the benefit of decedent's next of kin, excluding his parents, though on decedent's death his personal estate would have passed to his brothers and sisters, and not to his father and mother; as provided by Ohio Rev. St. 1906, §§ 4153, 4159.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 47, 48.]

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

C. A. Schmettau, for plaintiff in error.

James M. and Walter F. Brown, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This suit was brought to recover damages for the death of Patrick Duffy through the wrongful act, neglect and default of the Toledo, St. Louis & Western Railroad Company. There was a verdict and judgment for the plaintiff below which the

railroad company seeks to have reversed principally on the ground that the court should have given certain directions in its favor.

The accident occurred on January 26, 1904, on a switch of the railroad company adjacent to the mill of the Miami Maize Company. Duffy was a foreman of the Maize Company in charge of the loading and unloading of cars. At the time of the accident, a car was being loaded by a gang of men under control of Duffy. This car stood on the switch next to the mill and was being loaded by the use of a wooden spout or chute extending from the mill into the car through its door. Standing on the switch about five feet to the west of this car, was a string of three empty cars on which the brakes were not set. There was a downgrade from the main track to the mill on this side of the switch. While Duffy was standing in the door of the car, directing his gang of five or six men, two box cars, coupled together and in charge of a brakeman, were kicked down upon the switch by the engine of a switching crew in charge of Conductor Turner. The cars, when cut off from the engine, were thrown into the switch with such force that the brakeman failed to stop them; they struck the three empty cars, forced them violently against the car being loaded, and Duffy was caught between the side of the door and the wooden spout and killed. The negligence charged against the railroad company was, first, in not giving Duffy notice that the two cars were about to be kicked down upon the Maize Company's switch; second, in failing to set the brakes on the stationary cars; third, in throwing the two cars, detached from the engine, upon the switch with such force that they could not be controlled; fourth, in failing to provide a proper and sufficient brake on one of the two cars thrown in, so they could be stopped in time; and, fifth, in not stopping these two cars in time, but negligently permitting them to collide with the cars standing on the switch.

The principal contention was with respect to the claim of negligence in failing to give Duffy notice that the two cars were about to be thrown in upon the switch. The railroad company contended it had established by the uncontradicted testimony of Conductor Turner, supported by his assistant Smith, that notice was given Duffy, and the court was requested, for that reason, to give certain charges which would have required the jury to dispose of this claim in favor of the railroad company. The court refused to do this. Notwithstanding the vigorous argument of counsel for the railroad company, we think the court below took the proper view of this matter in leaving to the jury the decision of the disputed question of fact involved. Counsel assumed that because Turner, supported by Smith, testified that Duffy, some 20 minutes before the accident, gave him a list of the cars to be taken from and the cars to be put upon the Maize Company's switch, saying, "Come right away, just as soon as you can," and he replied "All right, Pat, I will be there right away," that all the notice required had been given, and since there was no witness to contradict this statement, Duffy being dead, it must be accepted as the truth, and this claim of negligence eliminated. The court was asked to charge that

"while the jury are the judges of the credibility of the witnesses, yet the jury has no right to disregard the uncontradicted testimony of a witness whose credibility and veracity are unimpeached." This the court gave as correct in the abstract, but, applying it to the case in hand, reminded the jury that a witness might be contradicted, not simply by a witness swearing to the opposite, but by the improbability of his story, and by anything, either in the testimony as given or in the circumstances of the case presented, which in the judgment of the jury, tended to discredit his statements. "Common sense," said the court below, "is to be applied here as everywhere; and no technical rule of law harnesses your judgment or controls your common sense view of what is the truth, when it comes from the witness stand. You are the judges of that."

We find nothing to criticise, but something to admire, in the lucid definition given by the court of the word "contradicted" as applied to testimony given in the course of the trial; and we think the court was justified in view of the argument of counsel for the railroad company, in saying to the jury that the fact that Duffy, after his conversation with Turner, immediately put himself in a place of great danger, where he met his death, might be treated by the jury as a circumstance contradicting Turner's statement that he was notified they were going to throw the cars in upon the switch at once. A number of witnesses testified to the custom of the railroad company to notify Duffy or one of his men, whenever it was about to kick cars in upon the Maize Company's switch, so that, if a car was being loaded, the spout, might be removed and the men look out for themselves. Whether this custom existed, whether ordinary care required its observance, and whether any notice in compliance with it was given just prior to the time of the accident, were all questions which were properly submitted to the jury. We are clearly of the opinion that the court would not have been justified in taking this case, or the part to which we have alluded, from the jury.

Duffy left a father and mother and some brothers and sisters, and it. is submitted that no testimony as to the condition of his father and mother, and the help he had been in the habit of giving them, should have been admitted, because, under the statutes of descent and distribution of Ohio, his personal estate would have passed to his brothers and sisters and not to his father and mother. Rev. St. Ohio, 1906, §§ 4153, 4159. But the Ohio statute regulating the action for injury by wrongful death, provides that it shall be "for the exclusive benefit of the wife, or husband, and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused." This action was properly brought for the benefit of the parents and next of kin of Duffy. The subsequent provision that the amount recovered "shall be apportioned among the beneficiaries. unless adjusted between themselves, by the court making the appointment in such manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries and the laws of descent and distribution of personal estates, left by persons dying intestate," did not

make this an action simply for the benefit of the next of kin, excluding the parents. While the laws of descent and distribution of personal estates are to be considered by the court making the apportionment, the distribution is not to be made strictly in accordance with such laws, for the court is also required to consider the age and condition of the beneficiaries, a thing not taken into account in the laws of descent and distribution. Rev. St. Ohio, 1906, § 6135.

The judgment is affirmed.